IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOLIN ANDREWS,

        Plaintiff,                        No. CIV S-04-1107 RRB GGH P

   vs.

THERESA GUZMAN, et al.,

        Defendants.               <u>ORDER</u>

_____/

        Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' February 20, 2007, motion to declare plaintiff a vexatious litigant. For the following reasons, the court orders plaintiff to file further briefing in support of opposition.

<u>Background</u>

        This action is proceeding on the verified second amended complaint filed July 13, 2006, on claims that defendants Tapia and Smith, correctional officers at California State Prison-Solano (CSP-Solano), mishandled plaintiff's legal and personal property in retaliation for his legal activities. Plaintiff also alleges that defendants violated his right to access the courts by

\\\\\

\\\\\

depriving him of his legal property.[1]

Plaintiff alleges that his "animosity" with defendants Smith and Tapia went back to 2001, when plaintiff filed a lawsuit on behalf of another inmate. Although this suit did not name defendants Smith and Tapia as defendants, they questioned plaintiff regarding this lawsuit. In addition, in 2003 and 2004 plaintiff and defendant Tapia had a disagreement regarding property. Plaintiff claims that defendant Smith was unhappy with him for filing a lawsuit against his supervisor, Teresa Guzman.

In August 2005, the United States Bureau of Immigration and Customs Enforcement (BICE) placed a detainer on plaintiff. On August 11, 2005, defendant Smith told plaintiff that he could not take all of his property with him to the BICE detention center. Plaintiff showed defendant Smith documents from the BICE Chief, the Los Angeles Superior Court and the District Court stating that he should be allowed to take his property. Defendant Smith told plaintiff that these documents meant nothing.

On August 13, 2005, plaintiff was called to Receiving and Release – R & R – where defendants worked. Defendant Smith told plaintiff that he could take 30 pounds of property with him and would have to donate the rest.

When the BICE officers arrived to transport plaintiff away from CSP-Solano, they told him that he could not take all of his property. As plaintiff was being placed in the van, defendant Tapia handed him a piece of paper and stated, "Here is your inventory [of your property]." The paper stated, "You have thirty days within which to submit the funds for your property to be shipped to you."

As plaintiff was being processed out of the facility, defendant Tapia took plaintiff's cassette player out of one of plaintiff's property boxes and placed it on a shelf. Defendant Tapia plugged it in and began playing plaintiff's Michael Jackson tape.

---

[1] Plaintiff's claim that defendants violated his right to due process by mishandling his property has been dismissed.

2

Following his arrival at the BICE detention facility in Tacoma, Washington, prison officials informed plaintiff's friend that it would cost $150 to have his remaining property shipped via UPS. After plaintiff's friend sent prison officials the money, the property was shipped on October 13, 2005. Due to a mix-up at the BICE detention facility, the property was sent back to CSP-Solano.

On November 1, 2005, the Warden of the BICE detention facility paid to have plaintiff's property shipped via Fed Ex from CSP-Solano. Plaintiff alleges that defendant Tapia was the officer who filled out the shipping forms to have the property shipped via Fed Ex. When the property arrived, most of the items were fine but the typewriter had been damaged and the cassette player appeared as if it had been used.

In addition, plaintiff had originally packed his property in six boxes. When it arrived at the BICE detention facility, the property was in ten boxes. Some of plaintiff's legal papers were missing.

Discussion

The All Writs Act, 28 U.S.C. § 1651, vests federal courts with the discretion to enjoin certain litigants from engaging in frivolous litigation. Clinton v. United States, 297 F.2d 899 (9th Cir. 1961). Under the statute, a court may restrict litigants with abusive and lengthy histories from submitting future filings of actions or papers provided that it: 1) gives the litigant an opportunity to oppose the order before it is entered, i.e. notice; 2) creates an adequate record for review; 3) makes substantive findings as to the frivolous or harassing nature of the litigant's actions; and 4) drafts a sufficiently detailed order. De Long v. Hennessey, 912 F.2d 1144, 1145-48 (9th Cir. 1990).

Several sources also permit the court to order a plaintiff to post security. Simunet East Associates v. Ramada Hotel Operating Company, 37 F.3d 573, 574 (9th Cir. 1994); In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th. Cir. 1987). One purpose of authorizing security is to allow the court to have some control over the administration of a

lawsuit. See Ilro Productions Ltd. v. Music Fair Enterprises, 94 F.R. D. 76, 78 (S.D.N.Y. 1982) (citing Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965)). In determining whether to impose a bond, the court may "take all the pertinent circumstances into account including the conduct of the litigants and the background and purpose of the litigation." Leighton, 340 F.2d at 861.

Additionally, "[w]hile no federal statute authorizes security for costs, the District Courts may make their own rules not inconsistent with the Federal Rules of Civil Procedure." Russell v. Cunningham, 233 F.2d 806, 811 (9th Cir. 1956) (citing Fed. R. Civ. P. 83). See also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1025 (2002). Local Rule 65.1-151(b) permits the court at any time, on its own motion or that of party, to order a party to give security, bond, or undertaking in such amount as the court may at any time determine to be appropriate. Local Rule 65.1-151(b) provides: "The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural rule of this Court on the basis of which the Court may order the giving of security, bond or undertaking, although the power of the court shall not be limited thereby."

Cal. Code Civ. P., Title 3A, part 2, commences with § 391. Cal. Code Civ. P. § 391.1 requires a party to furnish security on a showing that (1) the party is a vexatious litigant and (2) there is no reasonable probability that she will prevail in the instant litigation. Under stat law, a vexatious litigant is, inter alia, a person acting pro per who: a) attempts to relitiigate determined litigation, § 391(2); or b) repeatedly files unmeritorious motions, pleadings, or other papers, § 391(3).

In Moran v. Murtaugh, Miller, Meyer & Nelson, LLP, 40 Cal. 4th 780, 55 Cal. Rptr. 3d 112 (2007), the California Supreme Court recently held that in vexatious litigant proceedings, courts may weigh the evidence in determining whether there is a reasonable probability that a party will prevail.

/////

*Access to the Courts*

In order to state a colorable claim for denial of access to the courts, plaintiff must allege that he suffered an actual injury to "contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis v. Casey, 518 U.S. 343, 348, 116 S. Ct. 2174 (1996).

Defendants first argue that plaintiff is not likely to succeed on his access to the courts claim because he has failed to identify any documents denied him or how the lack of documents prejudiced his ability to litigate other suits.

In the second amended complaint, plaintiff alleges that his ability to litigate five cases was hindered as a result of the alleged confiscation of his legal property by defendants.

First, plaintiff alleges that he could not file an appeal in Andrews v. Grannis, 2005 U.S. Dist. LEXIS 37345 (E.D. August. 31, 2005). Second Amended Complaint, p. 4. Court records contain one case named Andrews v. Grannis, i.e. CIV S-03-1785 FCD GGH P. Court records indicate that on September 19, 2003, judgment was entered against plaintiff in this case. On January 31, 2005, the Ninth Circuit Court of Appeals denied plaintiff's motion to reinstate his appeal without prejudice to a renewed motion accompanied by a response to the order to show cause why the district court's order should not be summarily denied. On February 23, 2005, plaintiff filed a motion to reopen the case, which the district court denied on August 31, 2005. This was the last court order entered in this action. This order was returned unserved on plaintiff, as he apparently failed to file a notice of change of address following his transfer to the BICE detention center in August 2005.

Plaintiff's ability to litigate CIV S-03-1785 was not hindered by the alleged removal of documents relating to this case. Plaintiff did not renew his motion to reinstate his appeal following the January 31, 2005, order by the Ninth Circuit. Nor did plaintiff file a notice of change of address following his transfer to the BICE detention center. Accordingly, plaintiff may not rely on this action to state a colorable claim for denial of access to the courts.

1         Plaintiff also claims that he could not file a petition for a writ of certiorari with the
2 United States Supreme Court in <u>Andrews v. City of Los Angeles</u>, 03 180 GLT.  Second
3 Amended Complaint, p. 5.  The right to access the courts encompasses only direct criminal
4 appeals, habeas petitions and civil rights actions challenging conditions of confinement.  <u>Lewis</u>
5 <u>v. Casey</u>, 518 U.S. at 348-49, 116 S. Ct. 2174.  The nature of <u>Andrews v. City of Los Angeles</u> is
6 not clear from plaintiff's pleadings.  Accordingly, plaintiff is directed to file further briefing
7 describing what this case was about so that the court can determine whether he may state a
8 colorable access to the courts claim based on this case.  In addition, plaintiff does not describe
9 the documents he was missing which prevented him from filing his petition for writ of certiorari.
10 Assuming that <u>Andrews v. City of Los Angeles</u> challenged a condition of confinement or
11 plaintiff's criminal conviction, plaintiff must identify the missing documents which prevented
12 him from filing his petition for writ of certiorari in supplemental briefing.

13         Plaintiff claims he could not file a petition for writ of certiorari in the Supreme
14 Court regarding his habeas corpus petition, <u>Andrews v. Carey</u>, as all of the documents regarding
15 this case were missing.  Second Amended Complaint, p. 5.  Plaintiff alleges that all of his
16 paperwork in <u>Andrews v. Briggs</u> and <u>Andrews v. McCarger</u>, was missing.  <u>Id.</u>, p. 26.  Plaintiff
17 claims that he was forced to file oppositions to summary judgment motions in these cases
18 without his paperwork.  <u>Id.</u>  In order for the court to determine whether plaintiff has stated a
19 colorable access to the courts claim regarding these cases, plaintiff must identify these cases by
20 their case numbers in his supplemental briefing.  In addition, plaintiff must discuss why he was
21 prevented from proceeding with these cases as a result of the missing documents.  In other words,
22 plaintiff must discuss why he did not inform the court that his documents were missing.

23         Although plaintiff does not identify the case number for <u>Andrews v. Carey</u>, court
24 records indicate that plaintiff has filed two habeas corpus petitions in this court with this name,
25 CIV S-02-2414 LKK JFM P and CIV S-04-997 LKK EFB P.  Court records indicate that on
26 March 4, 2003, judgment was entered in CIV S-02-2414, well before the time defendants

allegedly confiscated plaintiff's documents. Plaintiff did not appeal from this judgment. Accordingly, plaintiff may not rely on this case to state a colorable access to the courts claim.

Court records indicate that CIV S-04-0997 LKK EFB P was submitted for decision following the filing of a traverse by plaintiff on January 19, 2005. Accordingly, plaintiff may not rely on this case to state a colorable access to the courts claim.

Court records contain one case named Andrews v. Briggs, i.e. CIV S-01-883 FCD PAN P. Court records indicate that on July 22, 2005, the Magistrate Judge Nowinski recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted. Plaintiff's claim that he was unable to file adequate pleadings in this action regarding the summary judgment motions is unsupported as these motions were submitted for decision before his transfer to the BICE detention facility. Accordingly, plaintiff may not rely on this case to state a colorable access to the courts claim.

Court records contain one case named Andrews v. McCarger, CIV S-02-0553 DFL PAN P. Court records indicate that plaintiff filed his opposition to defendants' summary judgment in this case in May 2005, i.e. before he was transferred to the BICE detention facility. Accordingly, plaintiff may not rely on this case to state a colorable access to the courts claim.

*Retaliation*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: 1) an assertion that a state actor took some adverse action against a plaintiff, 2) because of, 3) that prisoner's protected conduct, and that such action, 4) chilled the inmate's legitimate exercise of his First Amendment rights, and 5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 566-68 (9th Cir. 2005).

Defendants argue that plaintiff is not likely to succeed on either of his claims against defendant Tapia because he was not involved in the handling or processing of plaintiff's property upon his release from CSP-Solano. In support of this claim, defendants submitted the declaration of defendant Tapia who states that during plaintiff's release from CSP-Solano in

7

1  August 2005, he only processed the paperwork to facilitate his release.  Tapia decl., ¶ 2.  Such
2  paperwork included review of his removal order, comparison of his photographs to ensure that he
3  was the proper person to be released, and forwarding his paperwork to the watch commander for
4  final review.  Id.  At no time did defendant Tapia have any involvement with the processing of
5  plaintiff's property out of CSP-Solano.  Id.  Defendant Tapia also had no involvement with the
6  processing or evaluation of plaintiff's property when it was resent to plaintiff's location at the
7  detention center in November 2005.  Id., ¶ 3.
8           In his unverified opposition filed March 8, 2007, plaintiff claims that in August
9  2005, as he packed his property, defendant Tapia opened one of his boxes and pulled out his CD
10 player.  Opposition, p. 24.  Plaintiff also claims that when he arrived at the BICE detention
11 center, the Warden told him that defendant Tapia had been ordered to mail the property to
12 plaintiff.  Id., pp. 24-25.  Plaintiff claims that the Warden's secretary, Rhonda Williams, later
13 told him that she had spoken to defendant Tapia who told her that he was mailing plaintiff's
14 property that day.  Id., p. 25.  Plaintiff also claims that defendant Tapia separated his property
15 from the originally packed five boxes into ten boxes.  Id., p. 26.  P
16          Plaintiff also states that given the opportunity to conduct discovery, he will
17 provide evidence demonstrating that this is not true.  Opposition, pp. 27-28.  In addition to
18 testimony from "several sources," plaintiff claims that he will produce evidence in the form of
19 defendant Tapia's handwriting to show that he processed his property.  Id., pp. 28-29.
20          In the reply to plaintiff's opposition, defendants have submitted a supplemental
21 declaration from defendant Tapia in which he states that he understands that plaintiff claims that
22 he wrote the R & R Release Log Book and the UPS and Fed Ex documents for shipment of his
23 property.  Tapia supp. decl, ¶ 3.  These documents are attached as exhibits to plaintiff's
24 opposition.  Id.  Defendant Tapia states that he did not write any of these documents and his
25 handwriting is not of any of them.  Id.
26 /////

As discussed above, in vexatious litigant proceedings, the court is allowed to weigh the evidence. Defendant Tapia's verified declaration that he had no involvement with the processing of plaintiff's property outweighs plaintiff's unsupported claim that he did. Nevertheless, the court will grant plaintiff thirty days to submit evidence that defendant Tapia was involved in the processing of his property. In making this order, the court is not allowing plaintiff to conduct discovery. Rather, plaintiff is ordered to submit the evidence he has in his possession at this time, or can obtain within thirty days, such as a declaration from Rhonda Williams, in support of his claims against defendant Tapia.

Defendants also argue that plaintiff is not likely to succeed on his retaliation claim against defendant Smith because this defendant did not know whether plaintiff had any pending cases against CSP-Solano at the time of his departure. Smith supplemental declaration filed March 26, 2007, ¶ 5. In addition, defendant Smith did not know that plaintiff's property included legal papers from cases pending against CSP-Solano and nor did plaintiff ever tell him that his property included important legal documents from pending lawsuits. Id.

In his supplemental briefing, plaintiff shall submit any evidence in his possession demonstrating that defendant Smith knew that he had pending lawsuits against CSP-Solano and that his property to be shipped contained paperwork regarding these lawsuits.

Conclusion

On May 7, 2007, plaintiff filed a response to defendants' reply to his opposition. This response contains a 35 page legal memoranda and approximately 266 pages of exhibits. Because this pleading was not authorized, see Local Rule 78-230(m), it shall be disregarded.

As discussed above, within thirty days of the date of this order, plaintiff shall file further briefing regarding only the specific matters discussed above. In other words, plaintiff shall describe the nature of Andrews v. City of Los Angeles, 03 180 GLT and, if appropriate, identify the documents he was missing which prevented him from filing a petition for writ of certiorari. Plaintiff shall also identify by case number Andrews v. Carey, Andrews v. Briggs and

Andrews v. McCarger, assuming this court's identification of these cases above is inaccurate. Plaintiff must also identify the documents missing regarding these cases and discuss why they prevented him from accessing the courts.

Plaintiff shall also provide all evidence supporting his claim that defendant Tapia tampered with his property. Plaintiff shall also provide all evidence supporting his claim that defendant Smith was aware of pending cases against staff at CSP-Solano and knew that his property to be shipped contained legal documents regarding active legal cases.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's May 7, 2007, response to defendants' reply is disregarded;

2. Plaintiff's April 4, 2007, request for extension of time is denied as unnecessary;

3. Within thirty days of the date of this order, plaintiff shall provide the further briefing described above.

DATED: 7/11/07                                    /s/ Gregory G. Hollows
                                                  UNITED STATES MAGISTRATE JUDGE

an1107.fb