IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOLIN ANDREWS,

    Plaintiff,                  No. CIV S-04-1107 JAM GGH P

    vs.

THERESA GUZMAN, et al.,

    Defendants.            <u>ORDER</u>

_____/

I. <u>Introduction</u>

      Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently awaiting deportation at the Northwest Detention Center in Tacoma, Washington. Pending before the court is defendants' motion requesting that plaintiff be declared a vexatious litigant and for a pre-filing order.[1]

---

[1] Because plaintiff is no longer a state prisoner, defendants cannot file a motion pursuant to 28 U.S.C. § 1915(g) requesting that he be required to pay the filing fee as this section only applies to prisoners. 28 U.S.C. § 1915(g) provides,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [§ 1915(g)] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

For the following reasons, the court orders that defendants' motion requesting that plaintiff be declared a vexatious litigant is granted. The court will defer ruling on the motion for the pre-filing order until the conclusion of this action.

II. Discussion

The All Writs Act, 28 U.S.C. § 1651, vests federal courts with the discretion to enjoin certain litigants from engaging in frivolous litigation. Clinton v. United States, 297 F.2d 899 (9th Cir. 1961). Under the statute, a court may restrict litigants with abusive and lengthy histories from submitting future filings of actions or papers provided that it: 1) gives the litigant an opportunity to oppose the order before it is entered, i.e. notice; 2) creates an adequate record for review; 3) makes substantive findings as to the frivolous or harassing nature of the litigant's actions; and 4) drafts a sufficiently detailed order. De Long v. Hennessey, 912 F.2d 1144, 1145-48 (9th Cir. 1990).

Several sources also permit the court to order a plaintiff to post security. Simunet East Associates v. Ramada Hotel Operating Company, 37 F.3d 573, 574 (9th Cir. 1994); In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th. Cir. 1987). One purpose of authorizing security is to allow the court to have some control over the administration of a lawsuit. See Ilro Productions Ltd. v. Music Fair Enterprises, 94 F.R. D. 76, 78 (S.D.N.Y. 1982) (citing Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965)). In determining whether to impose a bond, the court may "take all the pertinent circumstances into account including the conduct of the litigants and the background and purpose of the litigation." Leighton, 340 F.2d at 861.

Additionally, "[w]hile no federal statute authorizes security for costs, the District Courts may make their own rules not inconsistent with the Federal Rules of Civil Procedure." Russell v. Cunningham, 233 F.2d 806, 811 (9th Cir. 1956) (citing Fed. R. Civ. P. 83). See also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1025 (2002). Local Rule 65.1-151(b) permits the court at any time, on its own motion or that of party, to order a

party to give security, bond, or undertaking in such amount as the court may at any time determine to be appropriate. Local Rule 65.1-151(b) provides: "The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural rule of this Court on the basis of which the Court may order the giving of security, bond or undertaking, although the power of the court shall not be limited thereby."

Cal. Code Civ. P., Title 3A, part 2, commences with § 391. Cal. Code Civ. P. § 391.1 requires a party to furnish security on a showing that (1) the party is a vexatious litigant and (2) there is no reasonable probability that she will prevail in the instant litigation. Cal. Code Civ. P. § 391 defines a vexatious litigant as follows:

b) "Vexatious litigant" means a person who does any of the following:

(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.

(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

Cal. Code Civ. P. § 391 defines "security" as "an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses including attorney's fees and not limited to taxable costs incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." Cal. Code Civ. P. § 391(c).

In Moran v. Murtaugh, Miller, Meyer & Nelson, LLP, 40 Cal. 4th 780, 55 Cal. Rptr. 3d 112 (2007), the California Supreme Court recently held that in vexatious litigant proceedings, courts may weigh the evidence in determining whether there is a reasonable probability that a party will prevail.

A. Vexatious Litigant

The court first considers whether plaintiff is a vexatious litigant as defined by Cal. Code Civ. P. § 391.

Defendants argue that plaintiff has commenced, prosecuted or maintained in propria persona at least five cases in the seven years prior to the filing of the instant action that have been dismissed as legally frivolous or for failing to state a claim upon which relief may be granted. The following cases fall into that category:

1. On July 31, 2006, Andrews v. Cortez, 01-5783 REC DLB P was dismissed for failing to state a claim upon which relief can be granted.[2]

2. On August 12, 2002, Andrews v. Hafey, 01-2018 FCD JFM P was dismissed for failing to state a claim upon which relief may be granted. On June 18, 2003, the Ninth Circuit affirmed this judgment.

3. On March 11, 2003, Andrews v. Carey, 02-2395 FCD DAD P was dismissed for failing to state a claim upon which relief may be granted.

4. On March 4, 2003, Antolin Patrick Wayne[3] v. Supervisors of San Francisco County, et al., No. C-03-0799 MMC (PR), 2003 WL 926715 (N.D. Cal. March 4, 2003) was dismissed for failing to state a colorable claim for relief) (cited in the September 4, 2003, findings and recommendations filed in Andrews v. Grannis, 03-1785 EJG DAD P recommending

---

[2] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

[3] Antolin Patrick Wayne is another name used by plaintiff.

4

that the action be dismissed pursuant to 28 U.S.C. § 1915(g).

    5. On April 22, 2004, <u>Andrews v. County of Los Angeles</u>, 01-4319, was dismissed for failing to state a claim upon which relief may be granted. <u>See</u> Defendants' Exhibit D.

    6. On January 25, 2005, <u>Andrews v. Nakazato</u>, 04-8034 ABC, was dismissed for failing to state a claim upon which relief may be granted. <u>See</u> Defendants' Exhibit L.

In the pending motion, defendants also observe that on February 12, 2002, the Los Angeles Superior Court declared plaintiff to be a vexatious litigant. <u>See</u> Motion, Exhibit M. On May 28, 2003, the California Court of Appeal also declared plaintiff to be a vexatious litigant. <u>Id.</u>, Exhibits M-N.

This court also observes that the District Court for the Western District of Washington has recently declared plaintiff to be a vexatious litigant. <u>See</u> <u>Marks v. U.S.</u>, No. C07-5679 FDB, 2008 WL 803150 (W.D.Wash. 2008). The Western District cited *24* cases filed by plaintiff demonstrating his improper filings and repetitive, abusive litigation practices. 2008 WL 803150 at *7-*19. In this opinion, the Western District noted that the Ninth Circuit Court of Appeals has entered a pre-filing order regarding plaintiff. <u>Id.</u> at * 7. This court cannot rely on <u>Marks v. U.S.</u> to find plaintiff vexatious in the instant action because the order declaring plaintiff vexatious by the Western District was issued after plaintiff filed this action. In addition, the claims litigated by plaintiff in the Western District are not the same or substantially similar to the facts litigated in the instant case.

The cases cited above adequately demonstrate that in the seven years preceding the filing of this action, plaintiff has commenced, prosecuted or maintained at least five actions that were determined adversely to plaintiff.[4] Accordingly, the court finds that plaintiff is a

---

[4] In his September 4, 2003, findings and recommendations recommending that plaintiff's application to proceed in forma pauperis be denied pursuant to 28 U.S.C. § 1915(g), Magistrate Judge Drozd observed that the records for the Eastern District reveal that since 1997, plaintiff had filed at least 23 cases in this court. He further observed that records for the United States

vexatious litigant within the meaning of Cal. Code Civ. P. § 391.

B. Reasonable Probability that Plaintiff will Prevail

The court next considers whether there is no reasonable probability that plaintiff will prevail in the instant litigation. The court will first set forth the claims on which this action is proceeding .

1. Plaintiff's Claims

This action is proceeding on the verified second amended complaint filed July 13, 2006, on claims that defendants Tapia and Smith, correctional officers at California State Prison-Solano (CSP-Solano), mishandled plaintiff's legal and personal property in retaliation for his legal activities. Plaintiff also alleges that defendants violated his right to access the courts by depriving him of his legal property.[5]

Plaintiff alleges that his "animosity" with defendants Smith and Tapia went back to 2001, when plaintiff filed a lawsuit on behalf of another inmate. Although this suit did not name defendants Smith and Tapia as defendants, they questioned plaintiff regarding this lawsuit. In addition, in 2003 and 2004 plaintiff and defendant Tapia had a disagreement regarding property. Plaintiff claims that defendant Smith was unhappy with him for filing a lawsuit against his supervisor, Teresa Guzman.

In August 2005, the United States Bureau of Immigration and Customs Enforcement (BICE) placed a detainer on plaintiff. On August 11, 2005, defendant Smith told plaintiff that he could not take all of his property with him to the BICE detention center. Plaintiff

---

District Court for the Northern District of California reflect that plaintiff had filed at least 15 cases in that court since 1998. He further stated that exhibits to plaintiff's complaint revealed that he had filed at least 31 cases in the United States District Court for the Central District of California and 2 cases in the United States District Court for the District of Columbia. If this court reviewed the records of all of the cases mentioned by Judge Drozd, it is likely that it could discover even more cases in support of this court's finding that plaintiff is a vexatious litigant.

[5] Plaintiff's claim that defendants violated his right to due process by mishandling his property has been dismissed.

showed defendant Smith documents from the BICE Chief, the Los Angeles Superior Court and the District Court stating that he should be allowed to take his property. Defendant Smith told plaintiff that these documents meant nothing.

On August 13, 2005, plaintiff was called to Receiving and Release – R & R – where defendants worked. Defendant Smith told plaintiff that he could take 30 pounds of property with him and would have to donate the rest.

When the BICE officers arrived to transport plaintiff away from CSP-Solano, they told him that he could not take all of his property. As plaintiff was being placed in the van, defendant Tapia handed him a piece of paper and stated, "Here is your inventory [of your property]." The paper stated, "You have thirty days within which to submit the funds for your property to be shipped to you."

As plaintiff was being processed out of the facility, defendant Tapia took plaintiff's cassette player out of one of plaintiff's property boxes and placed it on a shelf. Defendant Tapia plugged it in and began playing plaintiff's Michael Jackson tape.

Following his arrival at the BICE detention facility in Tacoma, Washington, prison officials informed plaintiff's friend that it would cost $150 to have his remaining property shipped via UPS. After plaintiff's friend sent prison officials the money, the property was shipped on October 13, 2005. Due to a mix-up at the BICE detention facility, the property was sent back to CSP-Solano.

On November 1, 2005, the Warden of the BICE detention facility paid to have plaintiff's property shipped via Fed Ex from CSP-Solano. Plaintiff alleges that defendant Tapia was the officer who filled out the shipping forms to have the property shipped via Fed Ex. When the property arrived, most of the items were fine but the typewriter had been damaged and the cassette player appeared as if it had been used.

In addition, plaintiff had originally packed his property in six boxes. When it arrived at the BICE detention facility, the property was in ten boxes. Some of plaintiff's legal

papers were missing.

### 2. Access to the Courts

In order to state a colorable claim for denial of access to the courts, plaintiff must allege that he suffered an actual injury to "contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis v. Casey, 518 U.S. 343, 348, 116 S. Ct. 2174 (1996).

In the pending motion, defendants first argued that plaintiff was not likely to succeed on his access to the courts claim because he failed to identify any missing documents. Defendants also argued that plaintiff failed to demonstrate how the lack of documents prejudiced his ability to litigate other suits.

In the second amended complaint, plaintiff alleged that his ability to litigate five cases was hindered as a result of the alleged confiscation of his legal property by defendants. On July 11, 2007, the court issued an order discussing these cases and ordered plaintiff to file further briefing addressing some of these cases. On February 17, 2009, plaintiff filed his further briefing.[6] For the reasons discussed below, the court finds that plaintiff has not demonstrated that his right to access the courts was violated.

*03-1785*

Plaintiff first alleged that he could not file an appeal in Andrews v. Grannis, 2005 U.S. Dist. LEXIS 37345 (E.D. August. 31, 2005). Second Amended Complaint, p. 4. Court records contain one case named Andrews v. Grannis, i.e. CIV S-03-1785 FCD GGH P. Court records indicate that on September 19, 2003, judgment was entered against plaintiff in this case. On January 31, 2005, the Ninth Circuit Court of Appeals denied plaintiff's motion to reinstate his appeal without prejudice to a renewed motion accompanied by a response to the order to show

---

[6] This action was originally assigned to District Judge Levi. After his resignation in 2007, this action was reassigned to two different district judges. The administrative delays caused by these reassignments contributed to the delay in the filing of plaintiff's response to the July 11, 2007, order.

cause why the district court's order should not be summarily affirmed. On February 23, 2005, in the district court plaintiff filed a motion to reopen the case, which the court denied on August 31, 2005. This was the last order entered in this action. This order was returned unserved on plaintiff, as he apparently failed to file a notice of change of address following his transfer to the BICE detention center in August 2005.

In the July 11, 2007, order this court stated that plaintiff's ability to litigate CIV S-03-1785 was not hindered by the alleged removal of documents relating to this case. Plaintiff did not renew his motion to reinstate his appeal following the January 31, 2005, order by the Ninth Circuit. Nor did plaintiff file a notice of change of address following his transfer to the BICE detention center. It was plaintiff's failure to prosecute this case, for matters unrelated to the documents that allegedly went missing in November 2005, that terminated this action. For these reasons, the court found that plaintiff could not rely on CIV S-03-1785 to state a colorable claim for denial of access to the courts.

In his February 17, 2009, pleading, plaintiff states that he did file a notice of change of address and that he received the August 31, 2005, order. Plaintiff alleges that he was unable to prosecute the appeal because all of the papers relevant to the case were missing. Plaintiff's claims are not supported by court records. As stated above, court records demonstrate that the August 31, 2005, order was returned unserved. Accordingly, for the reasons discussed above, plaintiff has not demonstrated that his right to access the courts was denied in connection with 03-1785.

*03 180 GLT*

Plaintiff claimed that he could not file a petition for a writ of certiorari with the United States Supreme Court in <u>Andrews v. City of Los Angeles</u>, 03 180 GL due to missing documents. Second Amended Complaint, p. 5. The right to access the courts encompasses only direct criminal appeals, habeas petitions and civil rights actions challenging conditions of confinement. <u>Lewis v. Casey</u>, 518 U.S. at 348-49, 116 S. Ct. 2174. The nature of <u>Andrews v.</u>

9

City of Los Angeles was not clear from plaintiff's pleadings. Accordingly, in the July 11, 2007, order the court ordered plaintiff to file further briefing describing what this case was about so that the court could determine whether he stated a colorable access to the courts claim based on this case. The court also observed that plaintiff did not describe the documents he was missing which prevented him from filing his petition for writ of certiorari. Assuming that Andrews v. City of Los Angeles challenged a condition of confinement or plaintiff's criminal conviction, the court ordered plaintiff to identify the missing documents which prevented him from filing his petition for writ of certiorari in his supplemental briefing.

In his February 17, 2009, pleading, plaintiff states that 03-180 GLT was a lawsuit against the city of Los Angeles for selling his impounded car without proper notice to plaintiff. This action was not a habeas corpus petition challenging his conviction and nor was this a civil rights action challenging his conditions of confinement. Accordingly, the court finds that plaintiff has not stated a colorable claim for violation of the right to access the courts in connection with 03-180 GLT.

*Andrews v. Carey*

Plaintiff claimed he could not file a petition for writ of certiorari in the Supreme Court regarding his habeas corpus petition, Andrews v. Carey, as all of the documents regarding this case were missing. Second Amended Complaint, p. 5.

In order for the court to determine whether plaintiff stated a colorable access to the courts claim regarding this case, on July 11, 2007, the court ordered him to identify this case by case number in his supplemental briefing. In addition, plaintiff was ordered to discuss why he was prevented from proceeding with this case as a result of the missing documents.

In the July 11, 2007, order, the court observed that court records indicated that plaintiff had filed two habeas corpus petitions in this court with this name, CIV S-02-2414 LKK JFM P and CIV S-04-997 LKK EFB P. Court records indicated that on March 4, 2003, judgment was entered in CIV S-02-2414, well before the time defendants allegedly confiscated plaintiff's

documents. Plaintiff did not appeal from this judgment. For these reasons, in the July 11, 2007, order, the court found that plaintiff could not rely on this case to state a colorable access to the courts claim.

Court records indicated that CIV S-04-0997 LKK EFB P was submitted for decision following the filing of a traverse by plaintiff on January 19, 2005. This case is presently under submission for decision. For these reasons, in the July 11, 2007, order, the court found that plaintiff could not rely on this case to state a colorable access to the courts claim.

In his February 17, 2009, pleading, plaintiff states that Andrews v. Carey was an action filed in state court concerning his mailing rights being violated by prison official Teresa Guzman. The right to access the courts applies to "'civil rights actions'– i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Lewis v. Casey, 518 U.S. 343, 354, 116 S.Ct. 2174, 2181 (1996). Accordingly, plaintiff cannot state a colorable access to the courts claim based on an alleged inability to litigate a state court action.[7]

*Andrews v. Briggs*

Plaintiff alleged that all of his paperwork in Andrews v. Briggs was missing. Second Amended Complaint, p. 26. Plaintiff claimed that he was forced to file an opposition to a summary judgment motions in this case without his paperwork. Id.

In the July 11, 2007, order, the court ordered plaintiff to file further briefing identifying this case by a case number and to discuss why he was prevented from proceeding with this case as a result of the missing documents.

Court records contain one case named Andrews v. Briggs, i.e. CIV S-01-883 FCD PAN P. Court records indicate that on July 22, 2005, the Magistrate Judge Nowinski recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted. In the July 11, 2007, order, the court found that plaintiff's

---

[7] Had Andrews v. Carey been brought in state court pursuant to 42 U.S.C. § 1983 it undoubtedly would have been removed to federal court.

claim that he was unable to file adequate pleadings in this action regarding the summary judgment motions was unsupported as these motions were submitted for decision before his transfer to the BICE detention facility. For these reasons, the court found that plaintiff could not rely on this case to state a colorable access to the courts claim.

In his February 17, 2009, pleading, plaintiff identified <u>Andrews v. Briggs</u> by case number 01-5883. Case no. CIV S-01-5883 AWI LJO P is a lawsuit filed by a different prisoner that was remanded to state court.

For the reasons discussed above, the court finds that plaintiff has not stated a colorable claim for denial of the right to access the courts regarding this case.

*Andrews v. McCarger*

Plaintiff alleged that all of his paperwork for <u>Andrews v. McCarger</u> was missing. Second Amended Complaint, p. 26. Plaintiff claimed that he was forced to file an opposition to a summary judgment motion in this case without his paperwork. <u>Id.</u>

In the July 11, 2007, order, the court ordered plaintiff to file further briefing identifying this case by a case number and to discuss why he was prevented from proceeding with this case as a result of the missing documents.

Court records contain one case named <u>Andrews v. McCarger</u>, CIV S-02-0553 DFL PAN P. Court records indicate that plaintiff filed his opposition to defendants' summary judgment in this case in May 2005, i.e. before he was transferred to the BICE detention facility. For this reason, in the July 11, 2007, order, the court found that plaintiff could not rely on this case to state a colorable access to the courts claim.

In his February 17, 2009, pleading, plaintiff states that he was unable to appeal the dismissal of 02-553 because of missing documents. This claim was not raised in the amended complaint. In any event, court records indicate that on June 26, 2006, plaintiff filed a notice of appeal of the June 12, 2006, judgment entered in this case. This appeal made no mention of missing documents. This appeal is pending in the Ninth Circuit Court of Appeals. For these

reasons, the court finds that plaintiff has not demonstrated that a lack of access to documents in 02-553 violated his right to access the courts.

In his February 17, 2009, pleading, plaintiff also states that he is missing documents from Kelce v. Solano and Pastori v. CCA. These cases were not identified in the amended complaint. Plaintiff may not amend his complaint by way of this further briefing to include claims regarding these actions.

For the reasons discussed above, the court finds that there is no reasonable probability that plaintiff will prevail on his access to the courts claim.

### 3. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: 1) an assertion that a state actor took some adverse action against a plaintiff, 2) because of, 3) that prisoner's protected conduct, and that such action, 4) chilled the inmate's legitimate exercise of his First Amendment rights, and 5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 566-68 (9th Cir. 2005).

Plaintiff alleges that defendants tampered with his personal and legal property when it was re-sent to the BICE detention facility in November 2005 in retaliation for his legal activities. Plaintiff claims that by removing his legal property, defendants "chilled" his exercise of his right to access the courts. As discussed above, plaintiff has not demonstrated that his ability to litigate a civil rights or habeas corpus action in federal court was hampered by the alleged loss of legal property in November 2005. Therefore, plaintiff has not demonstrated that defendants chilled his exercise of his First Amendment rights when they allegedly removed the legal property.

In Rhodes, the Ninth Circuit suggested that if the plaintiff had not alleged a chilling effect, his allegation of harm would suffice "since harm that is more than minimal will most likely always have a chilling effect." Rhodes, 408 F.3d at 569. The only harm plaintiff alleges he suffered other than the loss of legal property was the damage to his typewriter and that

13

his cassette player appeared to have been played. Because plaintiff suffered these injuries at the BICE facility, he cannot claim that this "harm" had any chilling effect on his legal activities. In any event, that his cassette player had been played does not constitute actionable harm. In addition, the typewriter plaintiff had was a state owned typewriter inadvertently provided to plaintiff. See Motion to Dismiss, Smith declaration, ¶ 6. Plaintiff should not have been allowed to take the typewriter with him upon his release. Id. For these reasons, the court does not find that the damage to plaintiff's typewriter is actionable harm.

In the motion to dismiss, defendants also argue that plaintiff is not likely to succeed on his retaliation claim against defendant Tapia because he was not involved in the handling or processing of plaintiff's property upon his release from CSP-Solano. In support of this claim, defendants submitted the declaration of defendant Tapia who stated that during plaintiff's release from CSP-Solano in August 2005, he only processed the paperwork to facilitate his release. Tapia decl., ¶ 2. Such paperwork included review of his removal order, comparison of his photographs to ensure that he was the proper person to be released, and forwarding his paperwork to the watch commander for final review. Id. At no time did defendant Tapia have any involvement with the processing of plaintiff's property out of CSP-Solano. Id. Defendant Tapia also had no involvement with the processing or evaluation of plaintiff's property when it was re-sent to plaintiff's location at the detention center in November 2005. Id., ¶ 3.

In his unverified opposition filed March 8, 2007, plaintiff claimed that in August 2005, as he packed his property, defendant Tapia opened one of his boxes and pulled out his CD player. Opposition, p. 24. Plaintiff also claimed that when he arrived at the BICE detention center, the Warden told him that defendant Tapia had been ordered to mail the property to plaintiff. Id., pp. 24-25. Plaintiff claimed that the Warden's secretary, Rhonda Williams, later told him that she had spoken to defendant Tapia who told her that he was mailing plaintiff's property that day. Id., p. 25. Plaintiff also claimed that defendant Tapia separated his property

14

from the originally packed five boxes into ten boxes. Id., p. 26. P

Plaintiff also stated that given the opportunity to conduct discovery, he would provide evidence demonstrating that this is not true. Opposition, pp. 27-28. In addition to testimony from "several sources," plaintiff claimed that he would produce evidence in the form of defendant Tapia's handwriting to show that he processed his property. Id., pp. 28-29.

In the reply to plaintiff's opposition, defendants submitted a supplemental declaration from defendant Tapia in which he stated that he understood that plaintiff claimed that he wrote the R & R Release Log Book and the UPS and Fed Ex documents for shipment of his property. Tapia supp. decl, ¶ 3. These documents are attached as exhibits to plaintiff's opposition. Id. Defendant Tapia stated that he did not write any of these documents and his handwriting was not on any of them. Id.

In the reply to plaintiff's opposition, defendants also provided the declaration of M. Valenzuela, an officer who works in Receiving and Release at CSP-Solano. He states that he, Officer Valenzuela, was responsible for the handling and transfer of plaintiff's property to the BICE detention center, and not defendant Tapia. He states that defendant Tapia was responsible for completing the paperwork necessary to facilitate plaintiff's transfer.

As stated above, in vexatious litigant proceedings, the court is allowed to weigh the evidence. In the July 11, 2007, order, this court found that defendant Tapia's verified declaration that he had no involvement with the processing of plaintiff's property outweighed plaintiff's unsupported claim that he did. Nevertheless, the court granted plaintiff an opportunity to submit evidence that defendant Tapia was involved in the processing of his property. In making this order, the court stated that it was not allowing plaintiff to conduct discovery. Rather, plaintiff was ordered to submit the evidence he had in his possession at this time, or could obtain within thirty days, such as a declaration from Rhonda Williams, in support of his claims against defendant Tapia.

\\\\\

In his February 17, 2009, response, plaintiff has submitted no evidence that defendant Tapia was involved in the processing of his property. Instead, he states that discovery will prove that defendant Tapia was involved in the processing of his property. Plaintiff alleges that there are inmate witnesses who could testify that defendant Tapia directly participated in the packing and shipping of his property. However, plaintiff attaches no declarations from these inmates. Plaintiff alleges that Rhonda Williams will testify that defendant told her that the property would be sent to Tacoma. However, plaintiff attaches no declaration from Ms. Williams.

Plaintiff himself has no personal knowledge that defendant Tapia had any involvement in the transfer of his property, when it was originally sent in August 2005 or when it was re-sent in November 2005. Rather, plaintiff claims that based on a prior conflict with defendant Tapia, as evidenced by him playing plaintiff's CD player in August 2005, he must have been the person to tamper with his property. This claim is entirely speculative as well as contradicted by the evidence submitted by defendants demonstrating that defendant Tapia was not involved with the processing of plaintiff's property. For these reasons, the court finds that plaintiff is not likely to succeed on his retaliation claim against defendant Tapia.

In the motion to dismiss, defendants also argue that plaintiff is not likely to succeed on his retaliation claim against defendant Smith. In his declaration submitted in support of the motion, defendant Smith states that to his knowledge, no one at CSP-Solano damaged or misplaced plaintiff's property, either when it was originally sent to Tacoma in August 2005, or when it was resent via Federal Express in November 2005. Smith Declaration, ¶ 4. He also states that he did not attempt to damage plaintiff's property or discard his legal papers. Id., ¶ 5. In his supplemental declaration filed March 26, 2007, defendant also states that he did not know whether plaintiff had any pending cases against CSP-Solano at the time of his departure. Smith supplemental declaration filed March 26, 2007, ¶ 5. In addition, defendant Smith did not know that plaintiff's property included legal papers from cases pending against CSP-Solano and nor

did plaintiff ever tell him that his property included important legal documents from pending lawsuits. Id.

In the July 11, 2007, order, the court directed plaintiff to submit any evidence in his possession demonstrating that defendant Smith knew that he had pending lawsuits against CSP-Solano and that his property to be shipped contained paperwork regarding these lawsuits.

In his February 17, 2009, pleading, plaintiff states that defendant Smith had knowledge of his cases filed against California State Prison-Solano. Plaintiff discusses communication he allegedly had with defendant Smith regarding his litigation. He also claims that defendant Smith was angry with him regarding a lawsuit he filed against Teresa Guzman. Plaintiff alleges that based on these prior conflicts with defendant Smith, he must have been involved with the tampering of his property when it was re-sent to the BICE detention facility in November 2005.

Even if defendant Smith was aware that plaintiff had filed lawsuits in the past, plaintiff has no evidence or personal knowledge that defendant Smith actually tampered with his property in August 2005 or when it was re-sent in November 2005. Plaintiff's speculation does not outweigh defendant's declaration that he did not tamper with the property. For these reasons, the court finds that plaintiff is not likely to succeed on his retaliation claim against defendant Tapia.

    4. Conspiracy

Plaintiff contends that defendants conspired to retaliate against him. A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir.2001); quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F .2d 1539, 1540-41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional rights. Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir.2006), quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the exact details of

the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441, quoting United Steel Workers, 865 F.2d at 1541.

The amended complaint contains no specific factual allegations of a meeting of the minds between defendants. Nor is there any demonstration of an actual deprivation of constitutional rights. For these reasons, the court finds that plaintiff is not likely to succeed on his conspiracy claim.

    C.  Security

Having found that plaintiff is a vexatious litigant, the court finds that requiring him to post security is warranted. One purpose of authorizing security for costs is to allow the court to have some control over the administration of a lawsuit. See Ilro Productions, Ltd. v. Music Fair Enterprises, 94 F.R.D. 76, 78 (S.D.N.Y.1982) (citing Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir.1965). In determining whether to impose a bond, the court may "take all the pertinent circumstances into account including the conduct of the litigants and the background and purpose of the litigation." Leighton, 340 F.2d at 861.

The court orders that plaintiff is required to post security based on his abusive litigation history and the frivolousness of the claims raised in the instant action. Attached to defendants' motion is the declaration from defense counsel stating that based on his experience in defending prisoner litigation, he conservatively estimates that the cost to defend this action would be $9,480. Accordingly, the court orders that plaintiff post security of $9,480 within twenty days of the filed date of this order. If no bond is posted within that time, this action will be dismissed.

\\\\\
\\\\\
\\\\\
\\\\\
\\\\\

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to declare plaintiff a vexatious litigant (no. 36) is granted;

2. Plaintiff is ordered to post security of $9,480 within twenty days of the filed date of this order.

DATED: 03/09/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

an1107.fr